192 So.2d 501 (1966)
Wilton G. HOGGE, Appellant,
v.
UNITED STATES RUBBER COMPANY, a Foreign Corporation, Billups Eastern Petroleum Company, a Foreign Corporation, and Billups Service of West Palm Beach, Inc., a Florida Corporation, Appellees.
No. 129.
District Court of Appeal of Florida. Fourth District.
December 7, 1966.
*502 Herbert L. Gildan, of Nason & Gildan, West Palm Beach, for appellant.
Kirk Sullivan, of Sullivan & Robinson, West Palm Beach, for appellee United States Rubber Co.
John R. Beranek, of Jones, Adams, Paine & Foster, West Palm Beach, for appellees-Billups Eastern Petroleum Co. and Billups Service of West Palm Beach, Inc.
ALLEN, WILLIAM P., Associate Judge.
Wilton G. Hogge, plaintiff below, appeals from a final judgment entered upon a jury verdict in favor of defendants, Billups and U.S. Rubber Company.
Appellant purchased a tire from a Billups service station where it was mounted on a rim but not inflated because the station's air compressor was out of order. The next morning appellant, with his two sons, took the tire to a 24 Hour Truck Stop to have it inflated. Appellant and his two sons gathered around while one of the attendants inflated the tire. According to one attendant, the "bead" did not seat properly after he put 31 pounds of air into it. The attendant who was pumping air into the tire had to wait on another customer and told another attendant to deflate the tire because there was something wrong with it and it might blow up. The plaintiff denied hearing this statement and the attendants could not positively say that plaintiff heard the warning.
The second attendant also had to wait on a customer and appellant began to further inflate the tire. Immediately, an explosion occurred and plaintiff suffered severe injuries.
Mr. Cook, one of the attendants, testified on the events leading up to and concerning the tire blowing up:
"Q Did you notice anything unusual about the tire at that time?
"A Yes I did, there was a place approximately six to eight inches that it wouldn't pop out on the rim, seat on the rim, and I told the fellow that was working for me, James Wilson, to take valve core lifter and remove the valve core, that the tire was dangerous and we would see what was wrong with it.

*503 "Q What did this spot look like that you saw there?
"A Well, it lacked about a quarter or three-eighths of inch popping out to the rim, just in a place about six inches, six or seven inches long I guess on the tire.
"Q Did it look soft and flimsy to you?
"A It was soft and flimsy, yes.
"Q Now at that time what did you do?
"A Well at the time I had 31 pounds of air in it, I had someone to come inside and I had to go in to the cash register.
"Q Approximately how long were you in there?
"A I would say four or five minutes, sir.
"Q When did you next see Mr. Hogge after you went in?
"A Well, I looked up and saw him I imagine about long enough for me to take about five steps when I saw him putting air in the tire. I tried to run out there to stop him."
On cross-examination. Mr. Cook testified as follows:
"Q That one spot, the rest of it was seated, is that when you saw the tire wasn't right.
"A There was a defect in it, and it was dangerous, and that's when I told Jim Wilson to take the valve core out of it and let the air out of it.
"Q Now when you told Jim Wilson that, where was Hogge?
"A Well, we were all standing around in that circle there sir, I mean I was still stooped down over the tire.
"Q Was Hogge as close to you as Wilson was or about so?
"A That I don't know. He could have been. I couldn't say Mr. Hogge heard it and I couldn't say Mr. Hogge didn't hear it.
"Q Was he close enough to hear it, if he had been listening?
"A Yes."
"* * *
"* * * Mr. Cook, do you remember being asked this question?
`Mr. Cook, are you positive that you made the statement in front of these people, that the tire was dangerous, or did you just ask Jim if he had a valve core lifter?
`Answer: Mr. Nason, I told them it was dangerous and not to put any more air in it, to take the valve core out of it and recheck it because it wasn't right. I know what those things do. I told him that it was dangerous. I remember telling them that and like I say, we were all standing there. They were all standing up and I was down messing with the tire, I mean myself. I put the air in it.'
"Do you remember that, sir?
"A Yes, sir.
"Q That is what happened, yes.
"A That is what happened.
"* * *
"Q I assume that you and Wilson were going to finish working on this tire  you hadn't finished you were just, both of you had to go do something else and you were going to come back, right?
"A That is right.
"Q In fact, you were ready to go back when you saw that Mr. Hogge was putting air in the tire?
"A I was going back out there, yes, sir."
The case was tried on the issue of negligence and implied and express warranties *504 in connection with the tire manufactured by U.S. Rubber and sold to appellant by Billups. The appellees pleaded assumption of risk and contributory negligence in their defense. The 24 Hour Truck Stop was not a party.
The only qualified expert permitted to testify was the manager of roadtesting and production development for the rubber company. He testified at length in regard to the manufacture of the tire that exploded and said rubber automobile tires would explode while being filled if they were improperly mounted on the rim in such a manner that the "bead" hangs up on the rim and if, thereafter, they are over-inflated in an attempt to seat the bead.
Appellant contends the trial court committed error, and each of his points will be reviewed in order.
Appellant's first point is that the trial court erred in charging the jury on assumption of risk where there was no evidence of the defense without building an inference on an inference; specifically, the jury had to infer that the appellant heard the remark that there was something wrong with the tire and then infer from the remark that appellant appreciated the danger of the tire blowing up by putting more air into the tire.
The evidence shows that the jury had to make one inference only  that appellant heard the remark. The following colloquy appears on cross-examination between Mr. Cook, the attendant, and counsel for appellant.
"Q Didn't you tell Mr. Wilson to take his valve core lifter, take the valve core out and not to put in more air because you had the right amount in it and it was not safe and the thing would blow up and not to put any more air in it?
"A I told Mr. Wilson that, yes, that it was dangerous.
"* * *
"Q Do you recall this being asked on page 20, line 13:
`Do you remember the exact words that you used when you spoke to Wilson?
`Answer: Yes, I told him to take his valve core lifter and take the valve core out and not to put any more air in it because I had the right amount of air and it wasn't safe and the thing would blow up on them, and not put any more air in it and they were all standing around.'
"Do you remember saying that at that time?
"A Yes, I remember making that definition."
The jury did not have to infer that appellant appreciated the danger of the tire blowing up. The garage attendant spelled out the danger of the possible blow up. The jury had to make only one inference  that appellant heard the garage attendant say the tire might blow up if more air was pumped into it.
Therefore, there was evidence to support the instruction on assumption of risk.
Secondly, appellant contends the court erred in charging the jury that plaintiff could be guilty of assuming the risk of injury if he "should have known" of the danger involved.
The pertinent portions of the trial court's charge to the jury on assumption of risk are:
"* * * The principle that one who voluntarily assumes the risk of injury from a known danger is based upon the fact that there is a known danger to that party and yet in spite of such known danger he continues on and is then injured.

*505 "There are two essential elements that you must find before the defendants have established the doctrine of assumption of risk and they are: first, that the plaintiff Wilton G. Hogge had knowledge of the danger involved and was able to appreciate the danger involved or should have had such knowledge; and secondly, that he voluntarily exposed himself to the danger in spite of such knowledge.
"If you do not find from the evidence that plaintiff Wilton G. Hogge knew or should have known of the danger involved in inflating this tire, or that he voluntarily exposed himself to the danger of the tire exploding with full knowledge of the fact, then you should not find that the plaintiff assumed the risk of the injury involved. * * *" (Emphasis added.)
The content of this instruction was not that appellant should have heard what the garage attendant said concerning the danger of a possible blow up. An instruction containing this language would have been incorrect here. The rules set out in Crosier v. Joseph Abraham Ford Company, Fla. App. 1963, 150 So.2d 499, are correct. An ordinarily prudent plaintiff should assume the risk of obvious dangers, and whether he should have known and comprehended the danger depends upon the class to which the danger belongs. Generally, the determination of whether the danger belongs to a class which an ordinarily prudent person should be charged with knowing and comprehending is for the jury. Crosier v. Joseph Abraham Ford Company, supra. See Prosser, Torts, page 463 (3rd ed. 1964). When, however, it is clear that any person of normal intelligence in plaintiff's position must have understood the danger the issue may be decided by the court. Prosser, supra, pages 463-464.
We believe the question of the danger was properly presented to the jury and that the jury was correctly instructed on assumption of risk.
Appellant's third and fourth points pertain principally to matters within the discretion of the trial judge, and there appears no showing that this discretion was abused.
Affirmed.
ANDREWS, Acting C.J., and KANNER (Ret.), Associate Judge, concur.